MILLS v PESETSKY

Docket No. 157395. Submitted September 21, 1994, at Grand Rapids. Decided December 29, 1994, at 9:00 A.M.

William H. Mills brought an action in the Muskegon Circuit Court against Anna Z. Pesetsky, seeking foreclosure on a land contract. No terms of repayment and rate of interest had been set in the $65,000 land contract. However, an addendum adopted by reference in the land contract provided that $45,000 was to be paid in monthly installments of at least $482, with interest at twelve percent a year and the balance and accrued interest due on or before May 1, 1995. The addendum also provided that the remaining $20,000 and interest accrued thereon at eight percent a year, compounded monthly, was to be due on or before May 1, 1995. The defendant had also executed a promissory note in favor of the plaintiff for $20,000, which was to be paid at the same terms as those for the $20,000 under the land contract. The defendant filed a counterclaim alleging that the land contract was usurious and seeking an injunction against the plaintiff's exercise of the acceleration provision of the land contract. The trial court, R. Max Daniels, J., stayed enforcement of the land contract and subsequently declared that the land contract was usurious. The parties then stipulated the amount of the outstanding balance on the land contract and the plaintiff's right to appeal the usury determination. The defendant paid the balance, the promissory note was canceled, and the plaintiff delivered a warranty deed to the defendant. The plaintiff appealed.

The Court of Appeals held:

The land contract and the addendum must be read together to determine the terms under which the $65,000 was to have been paid. The total interest on the land contract did not exceed the eleven percent a year maximum rate allowed for land contracts under MCL 438.31c(6); MSA 19.15(1c)(6). Because the land contract was not usurious, the plaintiff is entitled to interest as provided in the addendum until the date of the

REFERENCES

Am Jur 2d, Interest and Usury §§ 166, 167.
See ALR Index under Interest on Money; Usury.

delivery of the warranty deed and to reimbursement of amounts paid as defendant's attorney fees pursuant to MCL 438.32; MSA 19.15(2).

Reversed and remanded.

M.E. KOBZA, J., dissenting, stated that the land contract must be deemed usurious because a usurious rate of interest was effective for a portion of the land contract and that no case law, statute, or public policy supports the majority's determination that a land contract with a usurious rate of interest operative for a portion of the land contract is not illegal if the overall interest rate for the entire land contract is not usurious.

VENDOR AND PURCHASER — LAND CONTRACTS — USURY.

A land contract with a rate of interest that exceeds the maximum allowed by statute for a portion of the land contract is not usurious if the combined interest rates yield an effective rate that does not exceed the statutory maximum (MCL 438.31c[6]; MSA 19.15[1c][6]).

*Landman, Latimer, Clink & Robb* (by *Edward A. Grafton*), for the plaintiff.

*Cunningham Dalman, P.C.* (by *Ronald J. Vander Veen*), for the defendant.

Before: REILLY, P.J., and TAYLOR and M. E. KOBZA,* JJ.

REILLY, P.J. Plaintiff appeals as of right a circuit court order granting defendant's motion to stay enforcement of the acceleration provisions contained in a land contract between plaintiff and defendant and stating that the land contract was usurious. We reverse and remand for further proceedings.

Pursuant to the land contract, defendant purchased a home from plaintiff for $65,000. The land contract did not provide any terms for the payment of the $65,000, nor did it state the interest to be paid. According to an addendum, which was

---

* Circuit judge, sitting on the Court of Appeals by assignment.

incorporated by reference in the land contract, $45,000 was to be paid in monthly payments of $482 or more, "including principal and annual interest of 12% of the unpaid balance." The balance of principal and interest on that amount was due on or before May 1, 1995. The remaining $20,000, together with interest of eight percent per annum, compounded monthly, was also due on or before May 1, 1995. Defendant and Andrew L. Fugate, who later became defendant's husband, also executed a promissory note in favor of plaintiff for $20,000. The payment terms of the promissory note were the same as those for the $20,000 referred to in the addendum to the land contract, although the promissory note does not refer to the land contract or the addendum, and vice versa.

Plaintiff initiated this action to foreclose on the land contract after defendant failed to make three payments. Defendant filed an answer and a countercomplaint in which she contended that the interest rate being charged in the land contract was usurious and, therefore, that the interest was forfeited. MCL 438.32; MSA 19.15(2). Defendant also requested injunctive relief pursuant to MCL 438.31c(10); MSA 19.15(1c)(10) to prevent plaintiff from enforcing the acceleration provisions of the land contract. The trial court's order granting defendant's motion to stay enforcement of the land contract stated that the "land contract in question is deemed usurious."

On the basis of the court's ruling, the parties entered into a stipulation. They agreed on the principal balance remaining on the contract. That amount was paid and, pursuant to the agreement, the warranty deed for the property was executed and delivered to the defendant, and the promissory note was canceled. The stipulation preserved plaintiff's right to appeal the usury issue. The trial

court certified its order approving the stipulations and the transaction as a final order for purposes of MCR 7.203(A)(1).

We agree with plaintiff that the land contract and the addendum must be read together in order to determine the terms under which the $65,000 should be paid. We conclude that the total interest on the $65,000 amount of the land contract did not exceed the eleven percent per annum maximum rate allowed for land contracts under MCL 438.31c(6); MSA 19.15(1c)(6).[1] The trial court's ruling, based in part on *Bebee v Grettenberger,* 82 Mich App 416; 266 NW2d 829 (1978), was erroneous. That case is factually distinguishable inasmuch as it concerned a second mortgage that was substituted for a land contract. Second mortgages are treated differently than land contracts and first mortgages, and are subject to a lower maximum interest rate under the statute.

Because the land contract was not usurious, plaintiff is entitled to the interest as provided in the addendum to the land contract. Plaintiff's acceptance of payment, delivery of the warranty deed to defendant, and cancellation of the promissory note ended any further obligation by defendant to make payments under the land contract. However, because defendant agreed by stipulation to accept the deed with the understanding that

[1] Neither party has suggested that the promissory note is evidence of an obligation to pay an additional $20,000 over and above the $65,000 stated in the land contract, and we have no reason to do so. The maximum interest rate that could be charged on the $65,000 land contract was eleven percent per annum, or $7,150. The parties agreed that defendant would be obligated to pay twelve percent per annum on $45,000 of the amount due, or $5,400. They also agreed that the remaining $20,000 of the debt would be paid at the rate of eight percent per annum, compounded monthly, or an effective annual rate of 8.3 percent. Assuming no part of the $20,000 was paid by the end of the first year, $1,659.98 in interest would be owing on that portion of the debt. Interest owed under the two rates equals $7,059.98, or 10.86 percent of $65,000.

plaintiff reserved his rights to pursue the "usury issue" on appeal, defendant is obligated to pay the interest owing on any outstanding balance until the date the deed was delivered. Plaintiff is also entitled to reimbursement for the amounts paid for defendant's attorney fees, which plaintiff paid pursuant to the trial court's ruling that the contract was usurious. MCL 438.32; MSA 19.15(2).

Accordingly, the order granting defendant's motion for a stay and stating that the land contract is usurious is reversed. We remand for determination of the amount of interest owing for the period from the date the land contract was executed to the date the warranty deed was delivered.

Reversed and remanded.

Taylor, J., concurred.

M. E. Kobza, J. *(dissenting).* I oppose the view of the majority. There is no legal citation to support the decision, which takes liberties with the statute that prohibits usurious interest rates. I would affirm the judgment of the trial court.

The facts are simple and not in dispute. They are accurately set forth in the majority opinion. Plaintiff claimed that the trial court ignored the fact that all three contracts emanated from one transaction and that all three should be considered as one. Then, in a fanciful flight, followed by my brother and sister of this Court, plaintiff requests us to "merge" the interest rates of two of the three documents, one rate admitted by all to be usurious, twelve percent, and the other legal, eight percent.

Plaintiff urges this by analogy to other cases integrating different contracts on the basis that the contracts were related, connected, and intertwined. There was nothing in any of those cases

suggesting the path selected here, that if the terms of one contract are illegal and the terms of another legal, we can mesh them to make them both legal. It is this suggestion that distinguishes this case from those cases. Plaintiff's request to merge legal and illegal contract terms to come up with a "legal" rate of interest is not supported by case law, and such merger should not be allowed.

One case, *Bebee v Grettenberger,* 82 Mich App 416; 266 NW2d 829 (1978), spoke of a situation that was factually different but analogous to our situation. A legal contract with an eight percent (legal) rate of interest was replaced with a second mortgage with an eight percent interest rate, *illegal* for second mortgages. The *Bebee* Court held that it was not a lawful rate.

First, the trial court did consider all three contracts. No one disputes the remainder of the purchase price, $20,000, was replaced by the note, although nothing says so in the note, and neither the land contract nor the addendum refers specifically to that fact. Even one of the co-signers, William Fugate, is not a signatory of the land contract or the addendum.

However, to not consider that replacement as a part of the transaction could lead to an inequitable result, that is, a remaining balance due on or before May 1, 1995, as provided in the addendum, and an *additional* $20,000 due under the promissory note. Not only would that lead to an inequitable result, but no one is disputing that the $20,000 obligation was, in fact, the balance of the purchase price, after the first part of the purchase price, with its usurious rate, was paid. Even if we consider all three documents as part of one transaction, we still are not required to merge the interest rates of two of those documents to make the transaction legal. The documents themselves do

not even refer to the process engaged in by plaintiff and the majority.

Second, the trial court not only granted the stay requested by defendant, but it also denied the plaintiff's two motions for summary disposition. Such action is similar in effect to the operation of MCR 2.116(I)(2), where, if the moving party is not entitled to relief but the nonmoving party is, the court may grant the relief to the nonmoving party. Here, the award of relief to defendant, by its mutual exclusivity, resulted in denial of the opposite form of relief. In essence, only one side can be right on the issue.

Third, I subscribe to the reasoning of the trial court in its dispositive opinion, but I would add that it is unnecessary to consider the three documents as separate transactions to reach the same conclusion. Each document should stand the test of a lawful contract with respect to its terms when they are clear and unambiguous and should be given their plain meaning. The plain meaning and effect of the words of the addendum is that, while payments are being made during that period of time, the rate will be usurious. Suppose we follow the course of the majority, in a hypothetical setting, where a default occurs in the first stage. The majority opinion could be used to require a trial court to enforce the usurious rate of the first portion of the contract and terminate the entire transaction, with the potential in a summary proceeding to have the purchase returned or a foreclosure with a deficiency determined, in part, on the basis of an illegal interest rate. In fact, contracts could deliberately set an extremely high usurious rate of say twenty-two percent on the first half of the money, with no interest on the second half. Fraud potentially would be easier, requiring par-

ties to understand the total effect of different rates on different balances paid over different periods.

Fourth, the last point leads to separate consideration of the basic purposes of usury statutes. The Legislature has determined it to be public policy that people not be free to set any rate they want. Nor does the statute allow a rate higher than that allowed on one portion with a lower rate on a different portion. Many people and financial institutions follow the allowed rate without exception. Now, the majority opinion does violence to the spirit and letter of our usury laws, and it represents a singular precedential departure from our body of case law interpreting those statutes, a rogue if you will. Certainty and clarity are required to insure the smooth flow of debt instruments of this nature in the stream of commerce. The waters may become roiled now that exceptions of this nature are allowed.

Fifth, no other case in Michigan history deals specifically with the issue in this case. Any conclusion by this Court, therefore, should attempt to adhere closely to the letter of the statute when interpreting contracts, so as to give the statute its intended effect and accomplish its public purpose. This is especially true when the language of the addendum contract clearly states a usurious rate.

Therefore, I know of no authority to support any conclusion to invalidate the illegal interest provision; no case, statute, or public policy justifies this Court's reformation of the two separately enforceable legal documents involved in the transaction in this case. Each document should contain valid terms for each period to which each rate applies, because the contract terms may require enforcement without reference to the other document. The trial court in its opinion, accurately and correctly stated the law of this state. I would affirm.